[No. B215277. Second Dist., Div. Three. June 14, 2010.]

ROBERT QUICK, JR., Plaintiff and Appellant, v.
ADRIANNE PEARSON, as Trustee, etc., Defendant and Respondent.

372

## COUNSEL

Alan M. Goldberg for Plaintiff and Appellant.

William B. Hanley for Defendant and Respondent.

## OPINION

**KLEIN, P. J.**—Robert Quick, Jr., appeals the dismissal with prejudice of his petition for relief from breach of trust. We find the trial court improvidently sustained the trustee's demurrer to Quick's second amended petition for relief from breach of trust without leave to amend and reverse with directions to enter a new order overruling the demurrer.

### FACTS AND PROCEDURAL BACKGROUND

1. *The Samuel D. Blowitz testamentary trust.*

Samuel D. Blowitz died testate in 1971. Pursuant to the terms of a testamentary trust, he left the remainder of the trust estate in equal shares to

his grandchildren. An order settling first and final account and report of executor filed January 2, 1974, recounts that the trust provides: "Each grandchild living at the time of decedent's death shall hold undivided equal interests in the trust estate. When a grandchild attains age twenty-five (25), the Co-trustees shall distribute to such grandchild the entire principal of such grandchild's interest in the trust."[1]

Samuel D. Blowitz had two children, Adrianne Pearson and J. Michael Blowitz. They were appointed cotrustees of the testamentary trust.

2. *Quick alleges he improperly has been excluded from participating in the remainder of the trust.*

The operative pleading, the second amended petition for relief from breach of trust, alleged Quick is a grandchild of the testator, Samuel D. Blowitz, and is a beneficiary of the trust. The second amended petition further alleged trustee Pearson and Quick's mother, Marilyn Bennets, were close friends. Bennets married Robert Quick, Sr., shortly before Quick's birth in 1965. However, Pearson and Robert Quick, Sr., knew J. Michael Blowitz was Quick's natural father. Bennets and Robert Quick, Sr., divorced in 1978. Pearson maintained a friendship with Bennets through 1985.

In 1989, Quick learned J. Michael Blowitz was his natural father after being so informed by Shannon Blowitz, J. Michael Blowitz's daughter. Quick thereafter met J. Michael Blowitz, attended a Clippers game with him and "built a close relationship over the next few years." The second amended petition alleged Quick "knew very little about his grandfather and did not know that his grandfather's trust provided that his grandchildren were the remaindermen in the trust created in his grandfather's will." The second amended petition states that, "As a reasonable person wanting a close personal relationship with his natural father, [Quick] only inquired about personal matters as they related to him and his father and did not pursue any financial inquiry." The second amended petition asserted Quick was an adult providing for himself when he established his relationship with J. Michael Blowitz, he valued the relationship and had no reason to inquire as to the financial matters of his father or his grandfather. "Any reasonable adult male would value a close personal relationship with a father he had been estranged from and would not 'make it about money.' "

---

[1] A copy of the order settling first and final account and report of executor filed January 2, 1974, is attached to the second amended petition for relief from breach of trust.

The second amended petition further alleged J. Michael Blowitz had acknowledged paternity of Quick and a declaration of paternity executed by J. Michael Blowitz was attached to the second amended petition. It states: "I was aware that Robert [Quick] was my natural born son long before January 2, 1974, and my father, Samuel D. Blowitz, the decedent, was also aware that Robert was my son." The declaration also states that prior to Samuel D. Blowitz's death, Pearson was advised Quick was the son of J. Michael Blowitz.

In a section of the second amended petition entitled "NOTICE TO PETITIONER/STATUTE OF LIMITATION," Quick alleged he first learned of the trust and his interest in it in early 2007 when he was advised by J. Michael Blowitz's son, Mickey J. Blowitz, that Mickey J. Blowitz had received a large distribution from the trust as one of Samuel D. Blowitz's grandchildren. Mickey J. Blowitz further indicated he had received monthly distributions over the years and that Quick should inquire as to his share. "After further inquiry, [Quick] was advised by Mickey J. Blowitz that over the years whenever any of the other grandchildren inquired about [Quick] receiving his share, Pearson told them not to tell [Quick] about it." As a result, Quick first received notice of the trust after the final distribution.

Quick obtained a copy of the trust in early 2007, retained an attorney in August 2007 and timely filed the initial petition for relief from breach of trust in January of 2008.

Quick alleged Pearson was trustee of the trust after Samuel D. Blowitz's death and through the January 29, 2007 trust distribution and transfer of commercial real estate to Vons Companies for an amount in excess of $7 million. Quick alleged Pearson knew Quick was Samuel D. Blowitz's grandchild and therefore a member of the class of remaindermen identified in the trust. Quick asserted Pearson willfully and unlawfully refused to give Quick notice he was a beneficiary of the trust and willfully failed to distribute Quick's share of the trust remainder to Quick.

The second amended petition also indicated the three-year statute of limitations for actions by a beneficiary against a trustee for breach of an express trust provides that where a trustee's account or other written report does not adequately disclose the existence of the claim for breach, the three-year period begins when "the beneficiary discovered, or reasonably should have discovered, the subject of the claim." (Prob. Code, § 16460, subd. (a)(2).)

Quick alleged that, in light of the circumstances surrounding the discovery of his natural father and Pearson's efforts to conceal information that would

have permitted Quick to discover his interest in the trust, Quick could not reasonably have discovered his interest in the trust sooner. Thus, his claim was within the three-year statute of limitations for actions by a beneficiary against a trustee for breach of an express trust.

### 3. Proceedings on Pearson's demurrer to the second amended petition.

Pearson's demurrer to the second amended petition asserted Quick's claim was barred by the statute of limitations and the equitable doctrine of laches. Pearson claimed Quick's discovery of the identity of his natural father in 1989 provided sufficient information to put Quick on notice of any inheritance claims Quick may have had and Quick was unable to show he could not have made earlier discovery despite reasonable diligence, which is required for a successful assertion of delayed discovery. (*Grisham v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, 638 [54 Cal.Rptr.3d 735, 151 P.3d 1151].)

Pearson alleged the second amended petition disclosed Quick had made a personal choice not to inquire of his natural father regarding financial matters. Pearson also argued Quick failed to allege fraud with particularity and there is no allegation Pearson did anything else to prevent Quick from discovering his interest in the trust, including inquiring of his natural father who was a cotrustee. Pearson asserted the allegations Pearson failed to give Quick notice of the trust and told the other grandchildren not to tell Quick about the trust did not amount to fraud and did not excuse Quick from his duty of inquiry.

Regarding the doctrine of laches, Pearson asserted Quick discovered the identity of his natural father in 1989 but waited until 2007 to investigate the possibility of an inheritance. Payments were made under the trust to the decedent's four grandchildren, and the final distribution of the trust was completed in 1991.

### 4. The trial court's ruling.

The trial court issued a tentative decision sustaining the demurrer without leave to amend. At the hearing on the demurrer, the trial court indicated it was concerned with the statute limitations and the equitable doctrine of laches. The trial court stated it believed the case turned on whether "the failure of the fiduciary to voluntarily advise [Quick] of his potential taking constituted fraud because that's the only way around the statute that I could see . . . ." The trial court indicated the second amended petition might allege "negligent misrepresentation or something akin to that" but did not allege fraud.

Quick's counsel argued *Lazzarone v. Bank of America* (1986) 181 Cal.App.3d 581 [226 Cal.Rptr. 855], held a fiduciary's failure to disclose information amounts to a variety of extrinsic fraud. The trial court found it "strange" Quick would not be aware of the existence of the trust after he established a close relationship with J. Michael Blowitz and observed that Quick failed to inquire "not only [of] his natural father, but anybody else in the family, which causes me some concern because I think there is an element that requires some diligence" on Quick's part.

The trial court adopted the tentative ruling in a minute order and noted the second amended petition "specifically states [Quick] elected not to undertake any inquiry whatsoever." The trial court denied the second amended petition for relief from breach of trust with prejudice.

## CONTENTIONS

Quick contends the second amended petition properly pleaded fraudulent concealment and delayed discovery such that the demurrer should have been overruled.[2]

## DISCUSSION

1. *Standard of review on appeal from an order sustaining a demurrer without leave to amend.*

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) In addition to the complaint's allegations, we consider matters that must or may be judicially noticed. (*Ibid.*; Code Civ. Proc., § 430.30.) We also consider the complaint's exhibits. (*108 Holdings, Ltd. v. City of Rohnert Park* (2006) 136 Cal.App.4th 186, 193 [38 Cal.Rptr.3d 589]; *Satten v. Webb* (2002) 99 Cal.App.4th 365, 375 [121 Cal.Rptr.2d 234]; *Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627 [272 Cal.Rptr. 623].)

---

[2] Pearson notes Quick improperly has appealed from the minute order sustaining the demurrer without leave to amend. Pearson observes such an order is not a final judgment and is not an appealable order. Rather, an appeal properly is taken from the order of dismissal. (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699 [63 Cal.Rptr. 724, 433 P.2d 732]; *Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1032, fn. 1 [134 Cal.Rptr.2d 260].) Here, the minute order also denied Quick's second amended petition for relief from breach of trust with prejudice. Under these circumstances, we find it appropriate to construe the minute order as an appealable order dismissing the case with prejudice. (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 20 [23 Cal.Rptr.3d 490, 104 P.3d 844].)

In undertaking our independent review, "we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.) We review the trial court's denial of leave to amend for an abuse of discretion. (*Ibid.*)

2. *Probate Code section 16460, subdivision (a)(2); delayed discovery.*

The parties agree Quick's claim is governed by the three-year statute of limitations found in Probate Code section 16460, subdivision (a)(2). It provides: "If an interim or final account in writing or other written report does not adequately disclose the existence of a claim against the trustee for breach of trust or if a beneficiary does not receive any written account or report, the claim is barred as to that beneficiary unless a proceeding to assert the claim is commenced within three years after the beneficiary discovered, or reasonably should have discovered, the subject of the claim." (Prob. Code, § 16460, subd. (a)(2).)

■ The statute thus refers to the delayed discovery rule. The statement of the rule relied upon by Pearson is found in *Baker v. Beech Aircraft Corp.* (1979) 96 Cal.App.3d 321 [157 Cal.Rptr. 779]. *Baker,* quoting Witkin, states: " '[t]he rule is that the plaintiff must *plead and prove the facts* showing: (a) Lack of knowledge. (b) Lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date). (c) How and when he did actually discover the fraud or mistake. Under this rule constructive or presumed notice or knowledge are equivalent to knowledge. So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation (such as public records or corporation books), the statute commences to run.' (2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 339, pp. 1180–1181, original italics.)" (*Baker, supra,* at pp. 327–328.)

3. *Pearson's arguments.*

Pearson contends Quick "played the proverbial Ostrich, stuck his head in the sand and refused to investigate." Pearson repeatedly notes Quick had an obvious source of information available to him, namely, his natural father with whom he had a good relationship and who was a cotrustee of the trust.

Pearson also argues Quick fails to allege fraud with particularity in that he merely alleges Mickey J. Blowitz told Quick that Pearson told the four grandchildren who received trust distributions not to tell Quick about the trust. Pearson asserts this allegation fails to state what was said, when it was said and whether the grandchildren followed the instruction. Pearson claims

the allegation, even if true, is insufficient to support a cause of action for fraud because it lacks particularity. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 184 [132 Cal.Rptr.2d 490, 65 P.3d 1255].) Further, this allegation did not prevent Quick from discovering his interest in the trust. Pearson asserts Quick had a duty to inquire and investigate when he became aware of facts which would put a reasonable person on notice. (*Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 876 [191 Cal.Rptr. 619, 663 P.2d 177] [defendant's obligation as a fiduciary to provide information did not excuse the plaintiff's failure to investigate].)

Pearson additionally contends Quick's claim is barred by the equitable doctrine of laches. Laches requires an unreasonable delay in asserting a claim resulting in prejudice to the party against whom the claim is asserted. (*Magic Kitchen LLC v. Good Things Internat., Ltd.* (2007) 153 Cal.App.4th 1144, 1157 [63 Cal.Rptr.3d 713].) Pearson argues laches applies as a matter of law because Quick waited 19 years after discovering the identity of his natural father to assert a claim and he chose not to pursue financial matters with his natural father. Pearson suffered prejudice as a result of the delay in that the trust was distributed by its terms in 1991 when the youngest beneficiary reached 25 years of age. Pearson claims the final distribution order is binding and conclusive absent allegations of fraud. (*Estate of Strader* (2003) 107 Cal.App.4th 996, 1003, fn. 6 [132 Cal.Rptr.2d 649].) Further, the trust terminated in 1991, notwithstanding any subsequent transfers of real estate. (*Salvation Army v. Price* (1995) 36 Cal.App.4th 1619, 1624 [42 Cal.Rptr.2d 925].)

Lastly, Pearson asserts Quick failed to provide written notice of Quick's right to payment and the 1974 final order states "the Co-trustees shall incur no liability to persons whose interests may have been affected by [failure of notification] for disbursements made in good faith."

4. *The second amended petition states a cause of action for breach of trust.*

Contrary to Pearson's assertion, discovery of the identity of his natural father did not put Quick on notice he might be entitled to share in the remainder of a trust established by his grandfather, Samuel D. Blowitz. Nothing in the second amended petition suggests Quick became aware of facts that would have put a reasonable person on notice of the existence of the trust earlier than 2007 when Quick was advised of the trust's existence by Mickey J. Blowitz. Pearson, on the other hand, knew Quick was a beneficiary of the trust yet she made trust distributions that did not include him.

The cases cited by Pearson, *Noggle v. Bank of America* (1999) 70 Cal.App.4th 853 [82 Cal.Rptr.2d 829], and *Lazzarone v. Bank of America, supra*, 181 Cal.App.3d 581, are distinguishable in that they involve beneficiaries who received accountings from the trustee but nonetheless belatedly claimed the accountings did not disclose the breach of trust. Here, the second amended petition asserts Quick was unaware of the existence of the trust. It further alleges Pearson knew, at all relevant times, that Quick was a grandson of the testator and that Pearson failed to notify Quick of his interest in the trust and instructed the other trust beneficiaries not to inform Quick of the existence of the trust. Accepting the allegations of the second amended petition as true, as we must on review of an order sustaining a demurrer, we conclude Quick adequately has stated a cause of action for breach of trust by a trustee. Further, the allegations of the second amended petition adequately state a basis for assertion of the delayed discovery rule, thereby rendering the petition for breach of trust timely.

None of Pearson's arguments dissuades us from this conclusion.

█ Regarding Pearson's attempt to assert the equitable doctrine of laches, a party who seeks equity must also do equity. " 'The unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." ' [Citation.]" (*Magic Kitchen LLC v. Good Things Internat., Ltd., supra*, 153 Cal.App.4th at p. 1166; accord, *Farahani v. San Diego Community College Dist.* (2009) 175 Cal.App.4th 1486, 1495 [96 Cal.Rptr.3d 900]; *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 846 [60 Cal.Rptr.2d 780].) The allegation Pearson told the other beneficiaries not to mention the existence of the trust to Quick is a sufficient allegation of unclean hands such that Pearson's claim for equitable relief in the form of laches cannot be resolved against Quick on demurrer.

█ With respect to Pearson's assertion the estate is final absent a showing of fraud, Pearson cites *Estate of Strader, supra*, 107 Cal.App.4th at page 1004, for this proposition. *Strader*, in turn, cites statutes, including Probate Code section 7250, subdivisions (a) and (c), which provide the finality of an estate may not be asserted in the face of a showing the "judgment or order [was] obtained by fraud or conspiracy or by misrepresentation contained in the petition or account or in the judgment as to any material fact. For purposes of this subdivision, misrepresentation includes, but shall not be limited to, the omission of a material fact." (Prob. Code, § 7250, subd. (c).)

Thus, "fraud" for the purpose of attacking an otherwise final order of the probate court may be predicated on a showing of an omission to state a material fact. Certainly, the existence of a beneficiary who is unaware of the trust would qualify as a material fact.

■ The other statutes cited in *Strader* are Probate Code section 11605 and section 11753, subdivision (a). Probate Code section 11605 provides an order for a preliminary distribution, once final and in the absence of fraud, is conclusive. Because fraud includes the omission of a material fact, Probate Code section 11605 offers Pearson no harbor. ■ Probate Code section 11753, subdivision (a) provides a distribution in compliance with a court order entitles the personal representative to a full discharge with respect to property included in the order. However, entitlement to a full discharge must be seen as excluding court orders obtained by fraud, i.e., orders as to which a material fact was not disclosed. In sum, Pearson's omission of a material fact prevents Pearson, on demurrer, from relying on the finality of the probate orders entered in this case.

With respect to Pearson's assertion Quick failed to allege fraud with particularity, Quick is not required to allege fraud in the traditional sense of a misrepresentation of a material fact with knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage. (See *Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 990 [22 Cal.Rptr.3d 352, 102 P.3d 268].) Rather, Quick need only allege facts which indicate the delayed discovery rule should apply and facts that demonstrate Pearson had unclean hands sufficient to estop her assertion of laches. Quick's pleading accomplished these objectives by alleging Pearson knowingly failed to give notice of the trust and engaged in conduct designed to ensure Quick's lack of knowledge of the trust continued. Because Quick is not required to allege fraud in the traditional sense, the second amended petition is not required to allege specifically the "when," "to whom," "how," and "where" of the alleged fraud. (*Id.* at p. 993.)

■ In sum, the second amended petition showed (1) the petition for relief from breach of trust was timely under the delayed discovery rule; (2) the probate order the trustee relies on cannot be considered final on demurrer because the trustee omitted a material fact; and, (3) the trustee engaged in conduct that is sufficient to warrant a finding the trustee had unclean hands with respect to the subject matter of Quick's claim such that the trustee should be estopped from asserting the equitable doctrine of laches. We therefore conclude the allegations of the second amended petition are sufficient to state a cause of action for breach of trust.

## DISPOSITION

The judgment is reversed with directions to vacate the order sustaining the demurrer to the second amended petition for relief from breach of trust and to enter a new order overruling the demurrer. The matter is remanded for further proceedings consistent with this opinion. Quick is entitled to recover costs on appeal.

Kitching, J., and Aldrich, J., concurred.

On July 1, 2010, the opinion was modified to read as printed above.